Jonas Wolfberg, Administrator of the Estate of Charles Henry Johnson, Deceased, Plaintiff-Appellant, v. Prudence Mutual Casualty Company of Chicago, Illinois, Defendant-Appellee.

Gen. No. 51,545.

First District.

July 29, 1968.

Rehearing denied September 17, 1968.

Harry Kroll, of Chicago (Alan S. Katz and Samuel Allen, of counsel), for appellant.

George F. Barrett, of Chicago (Donald J. Duffy, of counsel), for appellee.

MR. JUSTICE CRAVEN delivered the opinion of the court.

This appeal arises from an order entered in the circuit court of Cook County granting defendant's motion to dismiss plaintiff's complaint and dismissing the complaint by the estate of an insured against an automobile insurer based on negligence and bad faith of the insurer in handling the defense and negotiation of the claims of third parties against the insured arising out of an automobile collision.

The order was based upon the failure of the complaint to state a cause of action in failing to allege that plaintiff-estate was damaged by the payment of the judgment recovered against it or its ability to pay such judgment.

The genesis of this litigation was in an automobile collision on November 23, 1957, when insured's automobile collided with two other automobiles, killing the insured and a passenger and seriously injuring four other occupants of his car. Charles Henry Johnson, plaintiff's intes-

tate, was insured by a policy issued by Prudence Mutual Casualty Company in the sum of $20,000. Suits were brought against the administrator of the estate of the insured on behalf of the deceased passenger and the other injured passengers. These suits were consolidated. Offer of settlement by the claimants in such suits was made for the balance remaining unpaid on the policy—$17,490, another claim against the insured having been settled. Also, a written demand that the insurer settle within the policy limits sum remaining was made by the administrator.[1] The insurer refused to settle or negotiate.

---

[1] This demand for settlement was made during the trial of the underlying action and after the trial had proceeded for three days and five days before the jury verdict totaling $55,500 was returned. The letter, as abstracted, reads as follows:

"January 21, 1965

"Prudence Mutual Casualty Company
162 North State Street
Chicago, Illinois

 Re: Leatha Perry, Administratrix,
   et al, Plaintiffs, –vs.–
   Jonas Wolfberg, Administrator,
   et al, Defendants
   Consolidated Case No. 58 C 4984

"Gentlemen:
"Although I have not received any direct notice from you, notwithstanding the fact that I have been advised that the plaintiffs in the above case made formal demand of settlement this morning in the Chambers of Judge John C. Melaniphy, Room 905, in the County Court House, I am impelled to make the following demands upon you.

"I have been advised that the plaintiffs in the above case, through their attorneys, respectively, have made a demand in full and complete settlement thereof on the above actions and claim encompassed in the consolidated cases of $17,490.00.

192

Upon jury trial, verdicts totaling $55,500 were rendered and judgment entered. The insurer deposited $17,500

"In the light of the massive injuries suffered by those plaintiffs and the death claim of Leatha Perry, I herewith demand that said offer of settlement be accepted and that said sum be paid.

"This is so, particularly in the light of the liability situation as it has developed during the trial, and particularly in that the injuries suffered by Lester Funkhauser included multiple fractures of the skull and whose special damages totaled in the excess of $5000.00. Ellis Turner suffered multiple fractures of the right hip and other injuries, and his specials exceeded $1600.00. With regard to the death case, Leatha Perry, the widow, was left penniless and with a minor child, ten years of age, at the time of death. Consideration should be given concerning the massive scar on Lester Funkhauser's face and further consideration of the fact that Jessie Bailey was injured to the extent that hospitalization was required, and his specials exceeded $800.00. Also, Leo Fletcher, who was injured, had specials approximating $500.00.

"I have also been advised that there is still pending a claim of the Catchings against me as administrator. I have never been apprised of the matters and extent of the injuries suffered by them or the extent of their claim.

"Under all these circumstances, I demand that these cases be settled for the above amount, or that a counter-offer be made that would take into consideration any potential claim of the Catchings. In the event that your company fails to take the above action and verdict is returned for an excess of the foresaid amount of the policy, then I intend to hold your company liable for any judgments in excess of $17,450.00 that may be entered against the estate of which I am the administrator, by reason of the above consolidated cases.

"I have been advised that the original policy covering Charles H. Johnson was in the amount of $20,000.00 and the [sic] $2500.00 of said fund has been paid in connection with the claims made by the occupants of the Rohrbach vehicle.

"I have also been advised that up to now there has been no offer made to the plaintiffs in connection with this case. As administrator, I believe that this is unreasonable and unwarranted, and that there is a duty upon you and the attorneys that you

with the clerk of the court who, pursuant to court order, distributed the same among the claimants. Thereafter execution was issued and served upon Wolfberg, the insured's administrator, and returned "no funds."

Plaintiff administrator of the insured filed this suit against the insurer seeking recovery of the excess of $38,000, alleging negligence and bad faith on the part of the insurer in failing to negotiate and compromise the suits for $17,500. Upon motion of the defendant-insurer, the court entered a final order of dismissal.

■ That an insurance company may so conduct itself as to be liable for an entire judgment recovered against its insured, irrespective of its policy limits, is well-settled in this state. Olympia Fields Country Club v. Bankers Indemnity Ins. Co., 325 Ill App 649, 60 NE2d 896 (1st Dist 1945); Cernocky v. Indemnity Ins. Co. of North America, 69 Ill App2d 196, 216 NE2d 198 (2nd Dist 1966). Thus, in Cernocky, the court said:

> "It is beyond question that an insurance company, although it acts under a policy which contains limits as to its liability, may so conduct itself as to be liable for the entire judgment recovered against its insured irrespective of its policy limits. General Cas. Co. of Wisconsin v. Whipple, 328 F2d 353, 355 (CA 7th, 1964).

---

have retained to defend you under the policy to seek the guidance and offices of the Probate Division of the Circuit Court of Cook County in connection with the proper handling of the affairs of this estate. I stand ready to go before the Probate Division of the Circuit Court of Cook County at any time to seek such guidance, advice and direction.

Very truly yours,<br>
/s/ Jonas Wolfberg<br>
Jonas Wolfberg<br>
Administartor [sic] of Estate of<br>
Charles Henry Johnson, Deceased

JW: jb"

"While the various jurisdictions differ as to the conduct which may subject an insurance carrier to liability for the excess of a judgment over its policy limits, in this jurisdiction conduct constituting fraud, negligence or bad faith may render the insurer so liable. (Citing cases.)" *Cernocky v. Indemnity Ins. Co. of North America*, 69 Ill App2d 196, 204, 216 NE2d 198, 203 (2nd Dist 1966).

■ An inquiry into the nature of such liability discloses that the insurance policy or contract itself contains no terms placing an express agreement or duty on the insurer to compromise claims. Rather, the contract leaves it to the insurer to determine the conduct of defense of actions brought against the insured, the matter of negotiation and settlement. By the contract of insurance, the insured agrees that the insurer has the right to conduct the defense of litigation and settlement negotiations. Since the nature of the contractual relation between insured and insurer requires the insured to give up these rights, the law places upon the insurer the duty of giving the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured, certainly where an action arises which may exceed the policy limits. *Cernocky v. Indemnity Ins. Co. of North America*, supra, quoting with approval from *Ballard v. Citizens Cas. Co. of New York*, 196 F2d 96, 102 (CA 7th, 1952).

We find no decided cases in Illinois as to whether, as conditions precedent to such a recovery, it must be alleged in the complaint and borne out by factual proof that there has been payment of the excess judgment by the insured or his estate, or ability to pay the same. The authorities in other jurisdictions seem to be in disagreement on this issue.

Appellee cites the case of *Dumas v. Hartford Accident & Indemnity Co.*, 92 NH 140, 26 A2d 361, 362 (1942), where the court said:

195

> "A right of action for negligence accrues only when the plaintiff has suffered an injury. . . . The mere existence of an outstanding judgment, which may never be paid, is not a legal injury, for the essence of the injury in such a case is pecuniary loss. (Citing case.)"

Also, in Harris v. Standard Accident & Insurance Co., 297 F2d 627 (CA 2nd NY, 1961), the Court of Appeals affirmed dismissal of an action brought by a trustee-in-bankruptcy of the insured. In State Automobile Ins. Co. v. York, 104 F2d 730 (CA 4th NC, 1939), the court reversed judgment for plaintiff where there was no testimony that he could not pay the judgment or that he was insolvent.

A review of the authorities persuades us to the view that the cases relied on by appellee constitute the earlier and minority view on this issue. These cases were considered in Wooten v. Central Mut. Ins. Co. (La), 182 So 2d 146 (1966), which noted that these cases were not persuasive, had been severely criticized, and were expressly refused or failed to be followed in other federal circuits.

██ The majority view in this country is represented by Jenkins v. General Acc. Fire & Life Assur. Corp., 349 Mass 699, 212 NE2d 464, 467 (Sup Ct Mass 1965), which stated:

> ". . . Despite some conflict in earlier cases, the weight of authority is that it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duty to act in good faith. . . ." (Citing Lee v. Nationwide Mut. Ins. Co., 286 F2d 295 (4th Cir); Wessing v. American Indem. Co., DC, 127 F Supp 775; Henke v. Iowa Home Mut. Cas. Co., 250 Ia 1123, 97 NW2d 168, and other cases.)

No different result should prevail whether plaintiff is a living person or the representative of a deceased insured's estate. Thus, the proposition that the assets of the estate or the lack of assets were relevant or material has been specifically rejected in Sweeten v. National Mut. Ins. Co., 233 Md 52, 194 A2d 817 (where decedent's estate had no assets); Lee v. Nationwide Mut. Ins. Co., 286 F2d 295 (insufficient assets); Henke v. Iowa Home Mut. Cas. Co., 97 NW2d 168; and Chitty v. State Farm Mut. Auto. Ins. Co., 38 FRD 37 (apparently no assets).

We are persuaded that the majority view is the sounder one both in justice and logic. The very fact of the entry of judgment itself constitutes damage and harm sufficient to permit recovery. The damage to the estate is the creation of liability for the judgments. The rule of damages is that incurrence is equivalent to outlay.

The insured would have had an action though insolvent. His death is no just reason to give a boon to the insurer.

Were payment or showing of ability to pay the rule, encouragement would be given to an insurer with an insolvent insured to unreasonably refuse to settle. Such a course would impair the use of insurance for the poor man. Further, the fullness or the emptiness of an insured's purse would be an irrelevant and poor measure of liability and performance of duty by the insurer under his contract.

The trial court was in error in dismissing the complaint and entering judgment for the defendant.

This panel, sitting in the Appellate Court, Fourth District, in an opinion filed concurrently with this one (Childress v. State Farm Mut. Auto. Ins. Co., 97 Ill App 2d 112, 239 NE2d 492), considered a somewhat similar question. In Childress, however, the plaintiff-insured was wholly insulated from ever incurring any personal liability by reason of an intervening covenant by the terms

of which his liability and subjection to damages were wholly removed. In Childress, the cause of action was one essentially based upon negligence without an underlying contractual relationship that would establish a duty, whereas, in this case, the cause of action is essentially one for breach of duty arising out of a contractual relationship.

The judgment of the circuit court of Cook County is reversed and this cause is remanded to that court with directions to set aside the judgment and order dismissing the complaint, and for further proceedings consistent with the views herein expressed.

Reversed and remanded with directions.

SMITH, P. J. and TRAPP, J., concur.