STEVEN B. EDWINS, Plaintiff-Appellant, v. GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Appellee.

Fourth District   No. 15577

Opinion filed December 3, 1979.—Rehearing denied January 9, 1980.

Jerome Mirza & Associates, Ltd., of Bloomington, and Edward J. Kionka, of Columbia, for appellant.

Donald M. Tennant, of Dobbins, Fraker & Tennant, of Champaign, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case concerns the question of whether a carrier of liability insurance was required to accept an offer to settle, within policy limits, a suit against its deceased insured. The case is unusual because the personal representative of the estate of the insured had requested that settlement not be made unless settlement could also be made on a counterclaim brought by the personal representative.

Plaintiff Steven B. Edwins appeals a summary judgment of the circuit court of Champaign County entered on April 27, 1979, against him and in favor of defendant General Casualty Company of Wisconsin. At issue is the question of whether the pleadings, depositions and affidavits show that there is no genuine issue as to any fact necessary for defendant to be entitled to judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57.

Plaintiff's complaint set forth that (1) prior to the suit on appeal, he had obtained a judgment for $100,000 in the circuit court of another county against John Dukeman, administrator of the estate of Murl D. Harlin, for injuries sustained in an automobile collision between cars driven by plaintiff and Harlin, (2) Harlin died in the collision, (3) Harlin had a policy of liability insurance with defendant with coverage limited

to $25,000 per person per occurrence, (4) plaintiff had three times offered to settle within those limits but defendant had not accepted any offer, (5) defendant's failure to settle was negligent and in bad faith, (6) the sum of $75,000 plus interest remained unpaid on the judgment, and (7) the cause of action against defendant for its failure to settle within policy limits had been assigned by the administrator, Dukeman, to plaintiff.

The documents before the trial court granting the summary judgment showed that (1) in the prior case the administrator had the benefit of counsel independent of that furnished by defendant, (2) the Harlin estate contained no assets of substance other than the liability insurance policy, (3) the administrator's attorney did not do trial work but wished to obtain a recovery on behalf of Harlin's next of kin for any wrongful death claim that might exist against plaintiff, (4) the administrator's attorney was unable to find an attorney willing to prosecute such an action by way of counterclaim, (5) the attorney hired by defendant to defend the suit against Harlin's administrator agreed, at the administrator's attorney's request, to file and try the counterclaim with the latter attorney helping the former, (6) the attorney hired by defendant insurance company agreed with the administrator and his attorney not to settle the action against the administrator unless a substantial offer was made to settle the counterclaim, (7) the only offer made to the administrator to settle the counterclaim was refused by the administrator as being inadequate, and (8) despite the agreement not to settle the case brought by plaintiff unless the counterclaim was settled, defendant did, during trial, offer to settle with plaintiff for $20,000.

The exact amount and number of plaintiff's offers appears to be in dispute, but the defendant does not deny that at least one offer to settle within policy limits was received from plaintiff. The attorney for the insurer was shown to have acknowledged that prior to trial he realized that if plaintiff received a jury verdict in his favor, the verdict would be well in excess of policy limits and for approximately $60,000 to $70,000. However, that attorney had stated that he foresaw a reasonable opportunity to defend plaintiff's claim because he thought he could keep out (a) testimony that Harlin had been drinking prior to the occurrence, and (b) testimony of a purported eyewitness. Copies of interoffice correspondence of defendant and its correspondence with its trial counsel could have been determined by a trier of fact to show that defendant recognized the counterclaim as very weak but permitted its trial counsel to proceed with the counterclaim because it would be a helpful defensive tactic.

■■ ■ Two points of law necessary to plaintiff's claim are not disputed. Even an insolvent estate such as the instant one can be damaged by having a judgment in excess of its liability policy limits obtained against it.

(*Smiley v. Manchester Insurance & Indemnity Co.* (1973), 13 Ill. App. 3d 809, 301 N.E.2d 19; *Wolfberg v. Prudence Mutual Casualty Co.* (1968), 98 Ill. App. 2d 190, 240 N.E.2d 176.) Although an injured party such as plaintiff has no direct cause of action against the liability insurance carrier of a tortfeasor, if that insurer improperly fails to settle a claim of the injured party against the tortfeasor, the latter's cause of action may, as here, be assigned by the tortfeasor or his personal representative to the injured party but the rights of the assignee are no greater than those of the insured. *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912; *Brown v. State Farm Fire & Casualty Corp.* (1975), 33 Ill. App. 3d 889, 338 N.E.2d 427.

■■ The heart of this case concerns the circumstances under which a refusal to settle within policy limits gives the insured a cause of action against the insurer. The mere refusal does not, of itself, give rise to liability. (*Browning.*) However, the cases of *Cernocky v. Indemnity Insurance Co.* (1966), 69 Ill. App. 2d 196, 216 N.E.2d 198, and *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896, set forth the doctrine that a cause of action does arise if the insurer's refusal to settle a claim within policy limits is fraudulent, in bad faith, or negligent. In *Cernocky*, the court stated that in negotiating settlements of cases where the recovery may exceed policy limits the insurer must "give to the insured's interest consideration, at least *equal* to that of its own." 69 Ill. App. 2d 196, 206-07, 216 N.E.2d 198, 204.

In *Olympia Fields Country Club*, recovery by an insured against its insurer for refusal to settle within policy limits was reversed for error in an instruction, but the court held evidence that the insurer had refused its attorney's recommendation to accept such an offer to be a sufficient basis for the verdict. In *Smiley*, evidence was presented of an opposite situation where trial counsel failed to follow the direction of the insurer to accept offers within the policy limits. This, plus an admission by an officer of the insurer that trial counsel had been negligent, was held to justify the verdict. Also deemed sufficient was evidence in *Cernocky* that counsel provided by the insurer had (1) refused to discuss settlement within policy limits with the injured party's attorneys although urged by the insured to do so, and (2) refused to make the amount of the policy limits available to the injured party's attorneys.

Where an attorney provided by a liability carrier also takes on the prosecution of a counterclaim on behalf of the insured, problems of conflict of interest often arise. Here, the insured's interests were protected by independent counsel. However, the unusual circumstances of the case created an unusual problem. The policy of liability insurance was an asset of the estate and plaintiff became a creditor of the estate. The desire of

the personal representative to obtain some sort of settlement, even though it might be quite small, on behalf of the next of kin of his decedent was understandable. However, when the plan was conceived to withhold settlement of the original action, even if it could be done within policy limits, in order to enforce the settlement potential of the counterclaim, the attempt to obtain money for the next of kin came in conflict with the administrator's duty to creditors of the estate.

Defendant's insurer reserved to itself the exclusive right to settle causes of action for which it had coverage. *Cernocky* described this type of provision as one of the factors which give rise to the insurer's duty to "give to the insured's interest consideration, at least *equal* to that of its own." In view of (1) defendant's admitted recognition that if a verdict was obtained it would likely far exceed the policy limits, and (2) defendant's tacit admission, by not taking an appeal, that the verdict was likely to stand, we do not find the documents before the trial court at the hearing on the motion for summary judgment to show conclusively that defendant gave the interests of the insured as much consideration as it gave to its own interests of getting out of the case as cheaply as possible. Considering only the latter interest, defendant had little incentive to settle near policy limits when those policy limits would be the maximum recovery obtainable against defendant, and there would always be a chance that it could obtain a judgment in favor of the insured.

The matters properly before the court did not negate, as a matter of law, a factual determination that defendant's refusal to settle within policy limits was either negligent or in bad faith. Granting of summary judgment for defendant was error. We reverse the summary judgment and remand for further proceedings.

Reversed and remanded.

MILLS, P. J., and CRAVEN, J., concur.