ROBERT NICHOLSON, Plaintiff-Appellee, v. ST. ANNE LANES, INC., Defendant (The Illinois Insurance Guaranty Fund, Respondent-Appellant).

Third District   No. 3—86—0541

Opinion filed August 13, 1987.

Thomas, Wallace, Feehan, Baron & Kaplan, of Joliet (James D. Grumley, of counsel), for appellant.

James M. Giacoma, of Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee (Christopher W. Bohlen, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The Illinois Insurance Guaranty Fund (hereafter, Fund) appeals from two orders of the circuit court of Kankakee County, one compelling St. Anne Lanes, Inc., defendant, to assign to plaintiff its purported "bad faith" cause of action against its insolvent insurer and against the Fund as successor to the insurer and the other one granting plaintiff's motion to strike the appearance of the Fund.

This appeal had its inception in a personal injury suit brought by plaintiff Robert Nicholson against St. Anne Lanes, Inc., owner of a bowling alley where plaintiff, a customer, was injured when he slipped and fell on a bar of soap in defendant's rest room. Before the trial commenced in October of 1981, defendant's insurer, Proprietors Insurance Company, had been placed in liquidation and the Illinois Guaranty Fund became obligated on the claim. Plaintiff obtained a judgment of $779,400 against defendant corporation, and we affirmed that judgment on appeal in *Nicholson v. St. Anne Lanes, Inc.* (1985), 136 Ill. App. 3d 664, 483 N.E.2d 291.

While the appeal was pending, a garnishment summons was filed against the Fund, and after the appeal on the merits was concluded, the Fund tendered the statutory limits of its liability, $150,000, in order to satisfy the garnishment order. A few days later, plaintiff served a citation to discover assets on defendant St. Anne Lanes,

Inc., and at a hearing on the citation, the testimony indicated that St. Anne Lanes had no assets or claims other than a potential claim against its insurer and its successor for a bad-faith failure to settle.

The trial court ordered St. Anne Lanes to assign the cause of action to plaintiff over the objection of the Fund. A short time later the court approved a substitution of attorneys for the Fund. The new attorneys filed a motion to vacate the assignment order, and plaintiff then filed a motion to strike the Fund's appearance in the case on the ground that the Fund was not a party to the lawsuit and had not filed a petition to intervene. The trial court granted the motion to strike the Fund's appearance. This appeal followed.

■ Under Illinois law, an insurance company may become liable for the entire judgment recovered against its insured, irrespective of policy limits, if its conduct constitutes fraud, negligence, or bad faith. (*E.g., Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 216 N.E.2d 198.) Therefore, where, as here, the judgment exceeded the policy limits and the defendant is insolvent, a bad-faith cause of action may be the defendant's only asset of value to the plaintiff.

■ The Fund contends that the order compelling St. Anne Lanes, Inc., to assign its alleged bad-faith cause of action to plaintiff is contrary to Illinois public policy in that it encourages and invites a sort of court-approved champerty and maintenance. (See Ill. Rev. Stat. 1985, ch. 13, par. 22.) The Fund relies upon *Roundtree v. Barringer* (1981), 92 Ill. App. 3d 903, 416 N.E.2d 675, where the court refused to order the assignment of a bad-faith claim on the ground that the courts should not encourage litigation by allowing some third party to determine whether a lawsuit should be brought.

We find more persuasive the holding to the contrary in *Phelan v. State Farm Mutual Automobile Insurance Co.* (1983), 114 Ill. App. 3d 96, 448 N.E.2d 579, where the court ruled that the law of Illinois does not prevent a trial court from ordering the assignment to the plaintiff of a bad-faith claim against the insurer of the judgment debtor. In reaching this result, the court expressly rejected the reasoning of *Roundtree* and held that the mere possibility of collusive conduct is not a valid basis for denying a right of action. Collusive conduct could be raised as a defense where appropriate. The court also observed: "As a practical matter, an injured plaintiff is in a better position to determine whether an action for bad faith may lie against a defendant's insurer since it is the plaintiff who conducts settlement negotiations with defendant's insurer." 114 Ill. App. 3d 96, 102, 448 N.E.2d 579.

*Phelan* is in accord with an earlier case, *Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 272 N.E.2d 261, where the court reviewed cases from other States and held that a cause of action for bad-faith failure to settle a claim can be assigned to the insured's judgment creditor. In determining that the cause of action was assignable, the court said:

> "The right of action in the insured, if any exists, arises out of the fact that by contract the insurer takes charge of the defense of the litigation, and of possible settlement. \*\*\* By reason of its assumption of control of the litigation, the insurance company undertakes a duty to treat the insured fairly. When the suit is in excess of the policy the insurer may, by deciding to continue litigation, expose the insured to a far greater risk than it takes. The duty to exercise good faith arises from the contractual assumption of control of the litigation.
> \*\*\*
> We find no valid reason in public policy why the cause of action should not be assignable." 1 Ill. App. 3d 47, 51, 272 N.E.2d 261, 262.

See also *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912; Annot., 12 A.L.R.3d 1158 (1967).

The Fund attempts to distinguish both *Brown* and *Phelan* on the ground that they involved voluntary assignments, not court-ordered ones. Admittedly, the court in *Brown* approved a voluntary assignment. In *Phelan*, however, the trial court had ordered the defendant to assign his bad-faith claim against his insurer to the plaintiff, the judgment creditor. *Phelan* is "on all fours" with the case before us.

The Fund also cites as contrary authority the case of *Christison v. Jones* (1980), 83 Ill. App. 3d 334, 405 N.E.2d 8, where this court held that a legal malpractice claim is not subject to assignment and, therefore, is not an asset of the estate of the bankrupt. *Christison* carefully distinguished the case of a client's action against the attorney for legal malpractice from an insured's cause of action against the insurer for refusing to settle within policy limits. After discussing the assignability of a negligence action in an insurance context in *Browning v. Heritage Insurance Co.*, we went on to say, "A different cause of action with entirely different policy considerations is involved where the negligence action is one against an attorney for malpractice." (83 Ill. App. 3d 334, 340, 405 N.E.2d 8, 12.) In view of this express acknowledgement of different policy concerns affecting the assignability of legal malpractice claims and those affecting the assignability of a bad-faith or negligence claim in an insurance case,

we do not find *Christison* to be authority for the Fund in the instant case.

■ Another error asserted by the Fund is the order of the trial court striking its appearance in the citation proceeding. We are inclined to agree that this action was rather peculiar, coming after the Fund had appeared several times and had been given notice of hearings, all without objection, and after the order involving the Fund had been entered. However, we see no need to rule on the merits of this issue. The Fund, whether or not a party, had standing to bring this appeal because it has a direct, immediate and substantial interest in the subject matter which would be prejudiced by the judgment or benefited by its reversal. (*Marcheschi v. P. I. Corp.* (1980), 84 Ill. App. 3d 873, 405 N.E.2d 1230.) As indicated above, the Fund has not persuaded us that the trial court erred in ordering defendant to assign its claim to plaintiff. Any issue concerning the Fund's appearance in the trial court is moot at this point in the proceeding.

Accordingly, the orders of the circuit court of Kankakee County are affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.